UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHERYLL CLEWETT** and **STEVE BAUS**, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br>v.<br><br>**NATIONAL POLICE & SHERIFFS COALITION PAC**,<br><br>     *Defendant*. | Civil Case No.: 1:22-cv-06032<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## BACKGROUND

### Introduction

  1.  This is a case about a sham political action committee designed to defraud consumers out of millions of dollars by soliciting so-called "political" contributions through rampant violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.

  2.  Defendant National Police & Sheriffs Coalition PAC ("Defendant") rakes in millions of dollars soliciting what it describes as "donations" by placing (or having placed on its behalf) prerecorded voice calls to individuals' cellular telephones without their prior express consent in violation of the TCPA.

  3.  Instead of putting the millions of dollars raised by Defendant to work for the law enforcement officials that Defendant claims to champion, Defendant misappropriates and funnels nearly all of the funds to an array of companies fraudulently characterized as "expenditures."

  4.  For example, for FY2021, Defendant claimed to have received $1,069,921 in contributions, but shelled out 99.339% of these contributions ($1,062,851) in "fundraising" and

1

other related expenses.

5. The actions of Defendant are the reason the TCPA exists and remains a vital consumer protection tool.

6. Accordingly, Plaintiffs bring this TCPA action individually and on behalf of a class of similarly situated individuals under 47 U.S.C. § 227(b).

**The Telephone Consumer Protection Act**

7. The TCPA was enacted in 1991 to prevent unwanted telephone calls and solicitation, provide power to individuals to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq*.

8. The TCPA provides private rights of action for various types of telemarketing-related misconduct.

9. Relevant here, section 227(b) of the TCPA prohibits making ***any*** call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

10. Political calls to cell phones are not exempt from the ambit of the TCPA. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013) ("The [TCPA]'s plain language demonstrates that it applies to all prerecorded phone calls, including those with a political message."); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343-44 (2020) (declining to invalidate the TCPA's prohibition on robocalls in its entirety and stating that "plaintiffs still may not make political robocalls to cell phones").

11. A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

12. The TCPA also provides for permanent injunctive relief to enjoin Defendant from violating the TCPA. *See* 47 U.S.C. § 227(b)(3)(A).

**Soundboard Technology**

13. The TCPA's prohibition on the use of artificial or prerecorded voices without the prior express consent of the called party includes the use of "soundboard technology." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Rules"); 35 FCC 14640, 14640-41 (F.C.C., Dec. 18, 2020).

14. Soundboard technology, also known as "avatar technology," is the use of a digital library of multiple short, prerecorded messages or sound clips that a soundboard can use to communicate with a called party during a call.

15. A person or artificial intelligence selects which prerecorded messages or sound clips to play in response to a called party's responses or inquiries.

16. The Federal Communications Commission ("FCC") has explained that soundboard technology violates the prohibition on using artificial or prerecorded voice messages, even if a live agent is in control of the response:

> **There is no doubt that soundboard technology "uses" a prerecorded voice to deliver a message to the consumer** . . . . As a result, if a live agent initiates the call with a prerecorded voice message using soundboard technology, the caller must obtain the called party's prior express consent. In other words, the mere presence of a live operator with soundboard technology does not negate the clear statutory prohibition against initiating a call using a prerecorded or artificial voice. **Nowhere does the TCPA text exempt calls where a human selects a prerecorded voice message for the called party**.

FCC Rules at 14644 (emphasis added).

17. The use of soundboard technology has drawn many consumer complaints. *See* FCC Rules at 14642-43.

18. For example, consumers complain that during soundboard calls, the consumers often receive inappropriate or nonsensical responses to their questions or comments, no live telemarketer intervenes to provide a human response when requested to do so, the recorded audio clips that are played do not adequately address their questions, and calls abruptly terminate in response to consumer questions or inquiries for which there is not an appropriate recorded response available.[1]

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the … laws [,] … of the United States."), as that cause of action arises under a federal statute, *to wit*, the TCPA. *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 132 S. Ct. 740, 181 L.Ed.2d 881 (2012) (unanimously holding that federal courts have subject matter jurisdiction for claims arising under the TCPA, specifically, 47 U.S.C. §227(b)(3) pursuant to 28 U.S.C. § 1331).

20. This Court has specific personal jurisdiction over Defendant because Defendant is headquartered in this District and maintains principal offices in this District.

21. Venue is proper in this District because the Defendant conducts significant amounts of business transactions within this District and because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in, was directed to, and/or emanated from this judicial district. *See* 28 U.S.C. § 1391.

---

[1] Letter from Lois Greisman, FTC to Michael Bills (Nov. 10, 2016) https://www.ftc.gov/system/files/documents/advisory_opinions/letter-lois-greisman-associate-director-division-marketing-practices-michael-bills/161110staffopsoundboarding.pdf (last accessed October 25, 2022)

## PARTIES

22. Plaintiff Steve Baus ("Mr. Baus") is a citizen and resident of Woodinville, Washington.

23. Plaintiff Baus is a "person" as defined by 47 U.S.C. § 153(39).

24. Plaintiff Cheryll Clewett ("Ms. Clewett") is a citizen and resident of Spring, Texas.

25. Plaintiff Clewett is a "person" as defined by 47 U.S.C. § 153(39).

26. Defendant National Police & Sheriffs Coalition PAC is an IRS 527 Political Committee headquartered at 7345 West 100th Place, Suite 105, Bridgeview, IL 60455.

27. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28. Defendant placed, or had placed on its behalf, automated, prerecorded and/or artificial voice calls in an effort to solicit donations.

29. As such, Defendant is directly liable for the violations of the TCPA alleged herein.

30. Alternatively, the acts complained of herein were carried out by agents operating for Defendant's benefit, or with actual, implied or apparent authority of Defendant, such that the Defendant is vicariously liable as to all Counts herein.

31. Alternatively, Defendant ratified or accepted the benefits of the acts of its agents as described herein, and is therefore jointly and severally liable as to all Counts herein.

## GENERAL FACTUAL ALLEGATIONS

32. Defendant makes unsolicited prerecorded and/or soundboard technology driven calls to hundreds of thousands of Americans without prior express consent.

33. For the calls made using an artificial or prerecorded voice (*i.e.*, all of the calls), Defendant utilizes soundboard technology to play an artificial voice and/or prerecorded voice

5

messages to the called party to aggressively solicit donations.

34. As set forth above, the FCC has declared that the use of soundboard technology violates the TCPA.

35. Plaintiffs are aware that Defendant's telephone calls used an artificial or prerecorded voice message because of their familiarity with normal human interaction, intonation, manners of speaking, and their inability to engage the artificial or prerecorded voice in reciprocal, sensical communication or banter.

36. None of the calls at issue in this Complaint were placed for emergency purposes.

37. Defendant did not have the prior express consent (or any consent) from any of the called parties prior to placing each call.

### **PLAINTIFF STEVE BAUS' FACTUAL ALLEGATIONS**

38. Mr. Baus is the user of a cellular telephone number ending in 2287.

39. On May 20, 2022, at 11:06 am, Mr. Baus received a call from Defendant.

40. The call came from (206) 565-0579, which was likely a "spoofed" number.[2]

41. During the call, Defendant utilized artificial or prerecorded voices.

42. Mr. Baus was aware that this telephone call used an artificial or prerecorded voice message because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the artificial or prerecorded voice in reciprocal, sensical communication or banter.

43. In addition, Mr. Baus asked "is this a real person?"

---

[2] Pursuant to 47 U.S.C. § 227(e), it is illegal for a person to "spoof" or "knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value . . . ." 47 U.S.C. §227(e)(5) includes both civil and criminal penalties.

44. In response, an automated message played stating: "You are speaking to a live computer operator."

45. Mr. Baus never provided prior express consent (or any consent) to Defendant for this telephone call.

## PLAINTIFF CHERYLL CLEWETT'S FACTUAL ALLEGATIONS

46. Ms. Clewett is the user of a cellular telephone number ending in 6727.

47. On April 28, 2022, at 2:47 pm, Ms. Clewett received a call from Defendant.

48. The call came from (713) 565-7432, which was likely a "spoofed" number.

49. During the call, Defendant utilized artificial or prerecorded voices.

50. Ms. Clewett was aware that this telephone call used an artificial or prerecorded voice message because of her familiarity with normal human interaction, intonation, manners of speaking, and her inability to engage the artificial or prerecorded voice in reciprocal, sensical communication or banter.

51. Ms. Clewett never provided prior express consent (or any consent) to Defendant for this telephone call.

## DEFENDANT'S LIABILITY

52. Because Defendant utilizes artificial, prerecorded messages, and/or soundboard driven technology calls, Defendant was required to obtain prior express consent from the persons to whom Defendant made the calls. *See* 47 U.S.C. § 227(b).

53. Plaintiffs and Class members never provided Defendant with any consent, written or otherwise.

54. Accordingly, Defendant's calls to Plaintiffs and Class members using an artificial or prerecorded voice violates 47 U.S.C. § 227(b).

7

55. For violations of 47 U.S.C. § 227(b), Plaintiffs and Class members are entitled to a minimum of $500 per call. *See* 47 U.S.C. § 227(b)(3)(B).

56. Plaintiffs and Class members are entitled to up to $1500 per call because Defendant's actions were knowing or willful. *See* 47 U.S.C. § 227(b)(3)(C).

57. Plaintiffs and Class members have suffered concrete harm because of Defendant's unwanted and unsolicited calls, including, but not limited to:

- Lost time tending to and responding to the unsolicited calls;
- Invasion of privacy; and
- Nuisance.

58. These forms of actual injury are sufficient for Article III standing purposes.

## **CLASS ACTION ALLEGATIONS**

59. Plaintiffs bring this action individually and on behalf of all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60. Pursuant to Fed. R. Civ. P. Rule 23(b)(2) and (3), Plaintiff seeks certification of a Class defined as follows:

> All persons and entities throughout the United States (1) to whom Defendant placed a call, (2) directed to a number assigned to a cellular telephone service, (3) with an artificial or prerecorded voice, (4) from four years prior to the date of filing of this lawsuit.

61. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; the undersigned counsel for Plaintiffs; and any claims for personal injury, wrongful death, and/or emotional distress.

62. The Class claims all derive directly from a single course of conduct by Defendant. Defendant engaged in uniform and standardized conduct toward the Class. Defendant did not differentiate, in degree of care or candor, its actions or inactions among individual Class members. The objective facts are the same for all Class members. Within the claim for relief set forth below, the same legal standards under federal law govern. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Fed. R. Civ. P. Rule 23.

63. This action satisfies the numerosity, commonality, typicality and adequacy requirements of those provisions.

64. The members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable, as the Class is comprised of hundreds, if not thousands, of individuals. This is based, in part, on the fact that Defendant claimed to have received more than $1 million for fiscal year 2021.

65. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

    a. The time periods during which Defendant placed its calls;

    b. The telephone numbers to which Defendant placed its calls;

    c. The telephone numbers for which Defendant had prior express consent;

    d. The purpose of such calls; and

    e. The names and addresses of Class members.

66. There are common questions of law and fact affecting the rights of the members of the Class, including, *inter alia*, the following:

      a.    Whether Defendant (or someone acting on its behalf) used an artificial or prerecorded voice in placing the calls;

      b.    Whether Defendant (or someone acting on its behalf) obtained prior express consent;

      c.    Whether Plaintiffs and Class members were damaged thereby, and the extent of damages for such violations; and

      d.    Whether Defendant should be enjoined from engaging in such conduct in the future.

67. Plaintiffs are members of the Class in that Defendant placed calls to them using an artificial or prerecorded voice.

68. Plaintiffs' claims are typical of the claims of the members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

69. Plaintiffs have no interests antagonistic to, or in conflict with, the Class.

70. Plaintiffs will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent them and the Class.

71. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

72. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

73. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

74. Common questions will predominate, and there will be no unusual manageability issues.

75. Defendant can identify every single Class member from its own records and records of its agents, or records of third parties. Accordingly, mere ministerial acts on the part of Defendant will be able to ascertain all potential Class members.

76. In this action, for the reasons set forth both above and below, Plaintiffs seek all available relief from Defendant for violating the TCPA.

## CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the Class)

77. Plaintiffs and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

78. Defendant placed, or had placed on its behalf, artificial or prerecorded voice telephone calls to Plaintiffs' and Class members' cellular telephone numbers without prior express consent.

79. The telephone calls were not made for emergency purposes.

80. Defendant has therefore violated 47 U.S.C. § 227(b).

81. As a result of Defendant's unlawful conduct, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each violation per call, pursuant to 47 U.S.C. § 227(b)(3)(B).

82. Plaintiffs and Class members are entitled to an award of treble damages in an amount up to $1,500 for each violation per call because Defendant's conduct was knowing and willful. *See* 47 U.S.C. § 227(b)(3)(C).

83. Plaintiffs and Class members are entitled to an award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein. *See* 47 U.S.C. § 227(b)(3)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. Pre- and post-judgment interest;

G. An award of reasonable attorneys' fees and costs, and

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Plaintiffs CHERYLL CLEWETT and STEVE BAUS, individually and on behalf of all others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*
Jeffrey D. Blake
*jeff@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, IL 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
*www.attorneyzim.com*

Max S. Morgan
*max.morgan@theweitzfirm.com*
Eric H. Weitz
*eric.weitz@theweitzfirm.com*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875

Counsel for Plaintiffs and the Proposed Class

13